## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN EMPIRE SURPLUS | § | |
| LINES INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-06-0004 |
| | § | |
| CRUM & FORSTER SPECIALTY | § | |
| INSURANCE COMPANY, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This insurance coverage declaratory judgment action is before the Court on Plaintiff American Empire Surplus Lines Insurance Company's Motion for Partial Summary Judgment [Doc. # 6] ("American Empire's Motion") and Defendant Crum & Forster Specialty Insurance Company's Motion for Partial Summary Judgment [Doc. # 9] ("Crum's Motion"). Both parties have responded in opposition and replied.[1]

Having considered the parties' submissions and oral arguments, all matters of record, and the applicable legal authorities, the Court concludes that American Empire's Motion should be **granted** and that Crum's Motion should be **denied**. The Court holds that Crum has a duty to defend Finger Companies ("Finger") as an

---

[1]    *See* American Empire's Brief in Support [Doc. # 7]; Crum's Response in Opposition [Doc. # 8]; American Empire's Reply [Doc. # 11]; American Empire's Response [Doc. # 12]; and Crum's Reply [Doc. # 16].

additional insured under an insurance policy Crum issued to Multi Building Inc. ("Multi"). This case will be **stayed and administratively closed** pending resolution of the underlying lawsuit or notification from the parties that they have otherwise resolved their dispute regarding Crum's indemnity obligation for any damages resulting from the underlying lawsuit.

## I.    FACTUAL BACKGROUND

Finger was the general contractor for a residential construction project in Houston, Texas ("Town Home Project"). Multi is a framing subcontractor. On December 1, 2003, Finger entered a "Contractor-Subcontract Agreement" engaging Multi as a subcontractor on the Town Home Project. This agreement obligated Multi to name Finger as an additional insured on a commercial general liability ("CGL") insurance policy with not less than $1,000,000 combined single limit coverage and $2,000,000 aggregate limit coverage.

Crum, Multi's insurer, issued Multi a one-year CGL insurance policy effective May 10, 2004 ("Policy"). The Policy contains an endorsement ("Endorsement") extending "additional insured" coverage to "persons or organizations as required by written contract."[2] The Endorsement in pertinent part contains two sentences that describe the scope of coverage for an additional insured:

---

[2]    *See* Appendix attached to American Empire's Motion ("Appendix"), at 0085.

**Who Is An Insured** is amended to include as an <u>additional</u> insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.     Your [Multi's] acts or omissions; or

2.     The acts or omissions of those acting on your [Multi's] behalf;

in the performance of the ongoing operations for the additional insured at the location(s) designated above.  There is no coverage for the additional insured for "bodily injury", "property damage" or personal and advertising injury" arising out of the sole negligence of the additional insured or by those acting on behalf of the additional insured.[3]

On September 22, 2004, Jose Ricardo Romero ("Romero") and Angel Martinez ("Martinez") were installing a cornice on a building at the Town Home Project when both Romero and Martinez fell from a makeshift aerial lift.  The makeshift lift consisted of a forklift outfitted with a "trash box."  Romero died and Martinez suffered physical injuries.  Romero's spouse and children (collectively, "Plaintiffs") filed a wrongful death lawsuit in Texas state court styled *Soledad Membreno, et al. v. Multi Building, Inc., et al.*, Cause No. 2004-53689, Harris County 11th Judicial District Court (the "Underlying Lawsuit").  Plaintiffs initially named Multi and others as defendants but did not sue Finger.

---

[3]      Appendix, at 0085.

On February 16, 2005, Plaintiffs filed their First Amended Petition adding Finger as a defendant.  Plaintiffs filed a Second Amended Petition on September 15, 2005, alleging that both Finger and Multi were negligent, that Romero was instructed by Finger "and/or" Multi to use a trash box attached to a forklift, and that Romero fell to the ground through the unprotected leading edge of the trash box as the box came loose from the forklift.  Plaintiffs further allege that Finger "and/or" Multi supplied the fork lift and trash box, that each and/or both controlled the methods used by Romero to install the cornice while on the crude lift, and that Finger "and/or" Multi controlled the design of the trash box and its attachment to the forklift.  Plaintiffs assert negligence, gross negligence, wrongful death, and survival claims.

Martinez filed a Petition in Intervention against both Finger and Multi in the Underlying Lawsuit on February 22, 2005, alleging that Martinez fell in the same accident that resulted in Romero's death.  Martinez alleges he was injured because of Finger and Multi's negligence.[4]

Finger is an insured under a CGL policy written by American Empire.  By letter dated March 24, 2005, American Empire demanded Crum assume Finger's defense in the Underlying Lawsuit on the ground that Finger is an additional insured under the

---

[4]     Martinez's Petition in Intervention states that he was injured "[a]s a proximate result of [Finger and Multi's] negligent acts and/or omissions." Appendix, at 228.

Policy.  Crum has declined.  American Empire filed suit for declaratory judgment (its Original Petition for Declaratory Relief) in Texas state court on November 23, 2005. American Empire seeks *inter alia* a declaration that Finger is entitled to a defense and indemnification from Crum in the Underlying Lawsuit.  Crum removed the case to this Court based on federal diversity jurisdiction.

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994))). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment,

that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d

393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to

sift through the record in search of evidence to support a party's opposition to summary

judgment." *See id.* (internal citations and quotations omitted); *see also De la O v.

Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("'Judges are not like pigs,

hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955,

956 (7th Cir. 1991))).

## III.   ANALYSIS

### A.   Summary of Dispute

American Empire moves for partial summary judgment seeking a ruling that the

Endorsement obligates Crum to defend Finger in the Underlying Lawsuit as an

"additional insured" under the Policy. Crum contends it owes no such duty and is

entitled to summary judgment in its favor pursuant to policy limitations in the first

sentence of the Endorsement.[5] Substituting the names of the parties and omitting

---

[5]   American Empire moves for summary judgment to establish as a matter of law that: (1) Crum
has the primary duty to defend Finger in the Underlying Lawsuit; (2) American Empire's duty
to defend Finger in the Underlying Lawsuit is purely excess to Crum's duty to defend Finger;
and (3) Crum is obligated to reimburse American Empire for the defense costs American
Empire has incurred in defending Finger in the Underlying Lawsuit from the time American
Empire tendered Finger's defense to Crum. Crum does not address American Empire's
arguments on these issues but instead only disputes that it owes a duty to defend Finger.
Accordingly, because the Court determines that Crum is obligated to defend Finger in the
Underlying Lawsuit, American Empire also is entitled to summary judgment on these issues.

language not applicable to this dispute, the two sentences in the Endorsement can be

paraphrased as follows:

(1)    Finger is included as an additional insured under the Policy, but only with respect to liability for bodily injury caused, in whole or in part, by the acts or omissions of Multi (the "whole or in part" sentence).

(2)    There is no coverage for Finger for bodily injury arising out of the sole negligence of Finger (the "sole cause" sentence).

During the May 5, 2006, oral argument on the pending motions, Crum correctly

conceded that the "sole cause" sentence does not bar coverage for Finger in light of the

allegations in the First and Second Amended Petitions.[6]  The outcome of the pending

---

[6]    The Court notes that the sole cause provision of the Endorsement is inapplicable.  Plaintiffs and Martinez allege, among other alternative theories, that their injuries arose out of various wrongful acts by Multi, the insured Crum stated in its initial brief that "FINGER is only being sued for its own *sole* negligence, and not for any negligence derivative of any misconduct by MULTI."  To the extent Crum intends here to advocate that Finger is being sued for its own sole negligence, the argument is rejected.  The operative pleadings in the Underlying Lawsuit include far broader claims, a point Crum acknowledged at oral argument and is addressed *infra*.  If there is potential coverage for even one claim, then the duty to defend arises.  *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004); *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995).  Therefore, the "sole cause" sentence in the Policy is not implicated by the pending motions.

The parties each cite to *Atofina Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2006), which holds that an additional insured endorsement excluding coverage for "liability arising out of any act, error, or omission of the additional insured" only excludes claims arising out of the additional insured's sole negligence.  *Atofina* does not address the policy language pertinent to this dispute, *i.e.*, the "whole or in part" sentence which provides coverage to Finger for "liability for bodily injury caused, in whole or in part, by the acts or omissions of Multi."  Therefore, *Atofina* does not inform the analysis in this Memorandum.

9

motions therefore turns on the meaning of the "whole or in part" sentence in the Endorsement.

On May 1, 2006, during the pendency of the parties' motions, Plaintiffs filed a Third Amended Petition in the Underlying Lawsuit adding vicarious liability claims against Finger based on Multi's conduct.  Based on the this new filing,[7] the parties have jointly stipulated that "Crum & Forster has the primary duty to defend Finger in the underlying state court litigation from the date that Plaintiffs' Third Amended Petition . . . was tendered to Crum & Forster shortly after it was filed."[8]  Because of this agreement, the Court's analysis is aimed at Crum's duty to defend Finger from the time American Empire first tendered Finger's Defense to Crum (March 24, 2005) until the time Plaintiffs' Third Amended Petition was tendered to Crum (shortly after May 1, 2006).

**B.**     **Insurer's Duty to Defend under Texas Law**

**General Standards for Interpretation of Insurance Policies.**— "Insurance policies are contracts."  *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001).  A federal court sitting in diversity in Texas applies Texas law in the interpretation of insurance policies.  *See id.* (citing *Erie R.R. Co. v.*

---

[7]     As discussed below, Crum agrees that Finger is entitled to coverage as an additional insured under the Policy with respect vicarious liability claims brought against Finger based on Multi's conduct.

[8]     *See* Joint Status Report and Stipulation [Doc. # 22], at 1.

*Tompkins*, 304 U.S. 64, 78–79 (1938)). Under Texas law, the meaning of an insurance

contract is to be determined under the standards applicable to contracts generally. *See*

*Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir.

2004); *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767–68 (5th Cir. 1995). In

construing an insurance contract, a court aspires "to ascertain the true intent of the

parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.

1983). Consideration must be given to all the provisions, with reference to the contract

as a whole rather than to any single provision. *Id.* Each provision should be given

meaning so that coverage is not illusory. *See Trinity Universal Ins. Co. v. Cowan*, 945

S.W.2d 819, 828 (Tex. 1997). If the language of a policy provision is worded so that

it can be given a definite or certain legal meaning, then the provision is not ambiguous

and we construe it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124

S.W.3d 154, 157 (Tex. 2003).

   "When the terms of an insurance policy are unambiguous, a court may not vary

those terms." *Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995) (citing

*Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965)). "The determination

of whether terms are ambiguous is a question of law." *Cicciarella*, 66 F.3d at 768. "A

contract is ambiguous only 'when its meaning is uncertain and doubtful or it is

reasonably susceptible of more than one meaning.'" *Id.* (quoting *Coker*, 650 S.W.2d

at 393).  "The fact that the parties disagree as to coverage does not create an ambiguity." *Valmont Energy Steel, Inc.*, 359 F.3d at 774–75 (quoting *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1261 (5th Cir. 1997)); *see General Agents Ins. Co. v. Arredondo*, 52 S.W.3d 762, 766 (Tex. App.—San Antonio 2001, pet. denied).

Ambiguous policies are interpreted in favor of coverage for the insured. *Cicciarella*, 66 F.3d at 775.  Finally, "if a contract of insurance is susceptible to more than one reasonable interpretation, [courts] must resolve the uncertainty by adopting the construction most favorable to the insured." *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1994) (footnote omitted) (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).  Moreover, "[e]xceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Hudson Energy Co.*, 811 S.W.2d at 555.[9]  "An intent to exclude coverage must be expressed in clear and unambiguous language."  *Reed*, 873 S.W.2d at 699 (citing *Hudson Energy Co.*, 811 S.W.2d at 555).

---

[9]     "When an alleged contract ambiguity involves an exclusionary provision of an insurance policy, then we 'must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (quoting *Hudson Energy Co.*, 811 S.W.2d at 555).

**Duty to Defend.**— An insurer has a duty to defend a policyholder in actions brought by a third party who asserts claims potentially covered by an insurance policy. *Harken Exploration Co.*, 261 F.3d at 471; *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  In Texas, when determining an insurer's duty to defend an insured, courts follow the "eight corners" or "complaint allegation" rule. *See Loving Home Care*, 363 F.3d at 528; *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002).  Under this rule, an insurer's duty to defend is determined by examining "the allegations in the most recent petition and the language of the insurance policy." *Harken Exploration Co.*, 261 F.3d at 471. "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *Centrum GS Ltd.*, 283 F.3d at 713 (internal citation omitted); *see Loving Home Care*, 363 F.3d at 528; *Merchants Fast Motor Lines*, 939 S.W.2d at 141.  If the complaint is unclear or ambiguous, or there is doubt whether an allegation states a cause of action within the coverage of a liability policy, the complaint is construed liberally in favor of the insured, and any doubt is resolved in favor of potential coverage. *See Loving Home Care*, 363 F.3d at 528; *Harken Exploration Co.*, 261 F.3d at 471.

"In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories

alleged." *Merchants Fast Motor Lines.*, 939 S.W.2d at 141; *see Loving Home Care*, 363 F.3d at 528.  A court must ascertain whether the facts, as alleged, fall within the policy's coverage.  *See Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.—Houston [1st Dist.] 1990, writ denied).   In making this assessment, the court may not consider the truth or falsity of the allegations in the underlying pleadings. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (applying Texas law).   Instead, all the facts alleged in the underlying complaint are assumed to be true. *Centrum GS Ltd.*, 283 F.3d at 713 (citing *Houston Petroleum Co.*, 830 S.W.2d at 155).

The most recently amended complaint provided to the insurer is examined to ascertain the existence of such duty. *Loving Home Care*, 363 F.3d at 528; *Harken Exploration Co.*, 261 F.3d at 471.  An insurer is obligated to defend an insured as long as the complaint alleges at least one cause of action within the scope of the policy. *Loving Home Care*, 363 F.3d at 528; *Lafarge Corp.*, 61 F.3d at 393.  "If the complaint alleges multiple claims or claims in the alternative, some of which fall within the coverage of the policy and some of which do not, the duty to defend arises if at least one of the claims is facially within the policy's coverage." *Lafarge Corp.*, 61 F.3d at 393.  "If coverage exists for any portion of a suit, the insurer must defend the insured in the entire suit." *Centrum GS Ltd.*, 283 F.3d at 714.

The insured bears the burden of showing that the claim against it is potentially within the policy's affirmative grant of coverage. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 553 (5th Cir. 2004) (citing *Vic Mfg. Co.*, 143 F.3d at 193). If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. *Id.* If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim potentially within the scope of coverage under the insurance policy. *Id.* If there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Merchants Fast Motor Lines*, 939 F.2d at 141.

### C.   Discussion

The issue presented is whether Crum is obligated by the "whole or in part" sentence to defend Finger in the Underlying Lawsuit once Plaintiffs had filed the First Amended Petition.[10] This issue turns on the wording of that single sentence in the Endorsement, which essentially provides that Finger is included as an additional insured under the Policy, but only with respect to liability for bodily injury caused, in whole or

---

[10]    Plaintiffs' Second Amended Petition adds additional parties but is otherwise identical in all material respects to Plaintiffs' First Amended Petition. Both pleadings contain the same allegations of negligence against Finger and Multi.

in part, by the acts or omissions of Multi.  The parties offer different interpretations of this sentence.  Crum principally argues the Policy covers Finger *only* when Finger is found vicariously or derivatively liable for the acts of Multi.  Crum reasons that, because Plaintiffs in the Underlying Lawsuit do not allege facts to support Finger's vicarious liability, Finger is not entitled to additional insured coverage at all.  American Empire counters that the "whole or in part" sentence should be construed exactly as written, *i.e.*, that Finger is covered as an additional insured for injuries "caused, in whole or in part" by Multi, and Finger's conduct is not pertinent to this analysis.[11]

The Court assumes the Endorsement is an affirmative grant of coverage under the Policy.[12]  Accordingly, the burden is on Finger, as the party seeking a defense, to demonstrate that it is potentially within the "whole or in part" sentence's grant of coverage.  *See Primrose Operating Co.*, 382 F.3d at 553.

The Court is unpersuaded by Crum's interpretation of the Policy.  Crum's theory fails to address the specific language of the Endorsement sentence in issue.  A literal reading of the "whole or in part" sentence supports American Empire's interpretation, and thus Finger is entitled to a defense from Crum in the Underlying Lawsuit.  First, the

---

[11]     Again, the Court notes that the Endorsement's "sole cause" sentence is not in issue here.

[12]     The parties did not brief this issue.  Nevertheless, given the Court's construction of the "whole or in part" sentence, the allocation of burden of proof on Finger, if in error, does not impact the outcome of the motions.

"whole or in part" sentence focuses on whether Multi is partially or wholly responsible for the third party injuries and Finger's liability for same. The Endorsement as written reasonably can be construed to cover situations where Finger and Multi are found jointly liable for their collaborative or jointly undertaken negligent conduct.[13]  *See generally Guaranty Nat. Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000) (applying Texas law; holding that courts must adopt insured's reasonable interpretation of insurance policy in duty to defend dispute); *see also generally Hudson Energy Co.*, 811 S.W.2d at 555 (stating a court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."). The focus of the definition of additional insured coverage in the "whole or in part" sentence is on

---

[13]     At least one commentator supports this interpretation. The commentator—who considered additional insured endorsement terms *identical* to the Endorsement here—states:

> The only allegations that would fall clearly outside the coverage provisions of the [additional insured endorsement] . . . would be explicit allegations of the additional insured's sole fault. In most instances, insurers should look beyond the lawsuit to determine if their insured's acts or omissions may have contributed to the bodily injury and, if so, they should defend and indemnify on behalf of the additional insured.

*See* Jack P. Gibson & Jeff Woodward, *The Evolution and Revolution within the Construction and Insurance Industry on Risk Transfer through Additional Insured Coverage*, 2005 CONSTRUCTION L. ch. 2 (Summer 2005).

whether Plaintiffs allege a theory in the operative pleading in the Underlying Lawsuit under which Finger could be held liable for conduct by Multi that "caused" injury to a third party in any way.  The sentence does not address the conduct of the other wrongdoer or wrongdoers, whether they be the additional insured (Finger) or not.

Contrary to Crum's argument, nothing in the "whole or in part" sentence of the Endorsement (or any other section cited by Crum) expressly limits Finger's additional insured coverage to derivative or vicarious claims based on Multi's acts, as Crum asserts.[14]  The words "derivative" and "vicarious" are conspicuously absent from the Endorsement.  Crum was free to draft an endorsement that specifically limited additional insured coverage to situations which the additional insured was liable on only a vicarious liability theory.  However, Crum did not do so.  Thus, Crum may not read into the clause an unstated limitation that Finger's negligent conduct in combination with Multi's disqualifies Finger as an additional insured.  *See Urethane Intern. Products v. Mid-Continent Cas. Co.*, 187 S.W.3d 172, 176 (Tex. App.—Waco 2006, no pet.) ("'[E]xceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.'" (quoting *Hudson Energy Co.*, 811 S.W.2d at

---

[14]    The parties do not address whether the "whole or in part" sentence is an affirmative, albeit limited, grant of coverage under the policy or an exclusion.  This characterization affects allocation of the burden of proof.  The court concludes the clause is an affirmative grant of coverage and that Finger has the burden to show it is potentially within the grant of coverage.

555)).  The additional insured "in whole or in part" sentence can be given definite meaning and legal effect.

Finger accordingly is entitled to a defense under the Policy if the operative pleading in the Underlying Lawsuit potentially alleges a claim against Finger based on some conduct by Multi, despite allegations of some wrongful act or omission of Finger. *See generally Loving Home Care*, 363 F.3d at 528 (insured is entitled to defense if pleadings in underlying case allege at least one cause of action within the scope of the policy); *Lafarge Corp.*, 61 F.3d at 393 (same).  Here, the underlying pleadings allege various acts of negligence committed by Finger "and/or" Multi.[15]  The pleadings must be construed broadly.  *See generally Merchants Fast Motor Lines*, 939 S.W.2d at 141 (if "doubt [exists] as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor").  The First and Second Amended Petitions, as well as the Petition in Intervention, easily support the liability theories that Multi's conduct, in whole or in part, caused Plaintiffs'

---

[15]    For instance, Plaintiffs allege Finger "and/or" Multi were negligent in causing Romero's death by (1) supplying and designing an unsafe aerial lift consisting of a trash box affixed to a forklift; (2) controlling Romero's unsafe use of the makeshift aerial lift; and (3) directing Romero's work in an unsafe manner.  Plaintiffs further allege that these acts or omissions "taken separately and/or collectively, singularly and/or cumulatively, constitute a direct and proximate cause of [Romero's] death."  Appendix, at 219.

injuries.  Plaintiffs and Martinez may argue at trial—at least as an alternative theory of liability—that Finger and Multi acted in concert in participating in the decisions to use, supply, or design the makeshift aerial lift; that Finger and Multi collaborated in directing the workers' use of the lift; or that Finger and Multi jointly made other decisions that rendered the workplace unsafe for Plaintiffs and Martinez.  These liability theories are encompassed by the "whole or in part" sentence of the Endorsement to the extent the injuries allegedly were "caused, in whole or in part" by Multi's acts or omissions.  Finger is therefore entitled to coverage as an additional insured under the Policy with respect to Plaintiffs' and Martinez's claims.  *See Loving Home Care*, 363 F.3d at 528; *Lafarge Corp.*, 61 F.3d at 393.

The Court has considered but is unpersuaded by Crum's further contention that there is no coverage when both Finger and Multi *independently* commit negligent acts or omissions to cause injury to another.[16]  Crum here attempts to restrict the debate to the issue of whether Crum has a duty to defend (or indemnify) Finger when Multi and Finger are alleged to have committed wrongful acts entirely independently from the other.  Crum's argument is unavailing because it relies on an artificially narrow

---

[16]     To illustrate this scenario, Crum offered the following hypothetical at oral argument: Two cars negligently strike a third car in an intersection. Driver A was speeding and Driver B ran a stop sign.  Both drivers were negligent but each driver was liable to the third care based on his own independent misconduct.  Driver A's speeding did not cause Driver B to run the stop sign.  Likewise, Driver B's running the stop sign did not cause Driver A to speed.

interpretation of the operative pleadings in the Underlying Lawsuit, as explained above. The Court therefore does not decide the viability of this linguistic interpretation of the Policy.[17]

## IV.   **CONCLUSION**

For the reasons discussed above, Finger is an additional insured under the Policy as of the time Plaintiffs in the Underlying Lawsuit filed the First Amended Petition. The Court concludes that Crum has the primary duty to defend Finger in the Underlying Lawsuit from that time onward.   American Empire's duty to defend Finger in the Underlying Lawsuit is purely excess to Crum's duty.   American Empire therefore is entitled to recoup from Crum any reasonable defense costs incurred defending Finger in the Underlying Lawsuit from the time American Empire tendered Finger's defense to Crum.   Accordingly, it is hereby

---

[17]   Crum appears to argue that there would be no coverage for Finger if Finger's liability were based totally on Finger's conduct independent of Multi's because Finger's "liability" in these circumstances would not be "caused" by Multi in any way.   In this regard, Crum focuses on the "whole or in part" sentence requirement that Finger's liability be "only with respect to liability for injury *caused*, in whole or in part, by [Multi's] acts or omissions" (emphasis added; internal quotation marks omitted).   In some respects, this is another version of the "sole cause" argument, and is not an issue the Court need reach at this time.   In any event, the coverage issue arising from Finger's and Multi's entirely independent acts is a question that must await the conclusion of the Underlying Lawsuit.

**ORDERED** that the Motion for Partial Summary Judgment [Doc. # 6] filed by Plaintiff American Empire Surplus Lines Insurance Company is **GRANTED**.  It is further

**ORDERED** that the Motion for Partial Summary Judgment [Doc. # 9] filed by Defendant Crum & Forster Specialty Insurance Company is **DENIED**.  It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** pending resolution of the underlying lawsuit or notification from the parties that they have otherwise resolved their dispute regarding Defendant Crum & Forster Specialty Insurance Company's indemnity obligation for any damages resulting from the underlying lawsuit.  It is further

**ORDERED** that the pretrial conference set in this matter for June 2, 2006, is hereby cancelled.

**SIGNED** at Houston, Texas, this **23rd** day of **May, 2006**.

Nancy F. Atlas
United States District Judge